Karla P. Navarrete, Esq (CA SBN#: 289891)
Law Office of Karla Navarrete
8997 California Ave., Suite B
South Gate, CA 90280-3065
Telephone: (213) 444-9563
Email: abogadakarla@gmail.com

*Counsel for Petitioner*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISON**

| | |
|---|---|
| Melannie RANGEL CARRILLO<br><br>Petitioner,<br><br>v.<br><br>Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; Todd BLANCHE, Acting U.S. Attorney General; Todd LYONS, Senior Official Performing the Duties of the Director, Immigration and Customs Enforcement; Jaime RIOS, Acting Director, Los Angeles Field Office, Immigration and Customs Enforcement, Enforcement and Removal Operations; Fereti SEMAIA, Warden, Adelanto ICE Processing Center; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Respondents. | Case No.:<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>PETITIONER'S DHS NO:<br>221-462-351 |

**INTRODUCTION**

1. Petitioner, Melannie Rangel Carrillo, brings this Petition for Writ of Habeas Corpus under 28 U.S.C. 2241 to challenge the legality of her warrantless arrest and her ongoing detention in custody of the U.S. Immigration and Customs Enforcement ("ICE"). Please note that Petitioner's actual name is Melanny Rangel Carrillo.

2. Petitioner is a native and citizen of Mexico. Petitioner's alien number is 221-462-351.

3. Petitioner is currently detained at the Adelanto ICE Processing Center in Adelanto, California by immigration authorities. Petitioner is in pending removal proceedings before an Immigration Judge and is charged under 8 U.S.C. § 1227(a)(1)(B) with being present in the United States without status after entering on a temporary visa under 8 U.S.C. § 1101(a)(15). Although Congress authorized discretionary immigration detention under 8 U.S.C. §1226(a), that statute does not authorize arbitrary or unconstitutional detention.

4. On February 14, 2026, Petitioner was detained during a targeted operation. Petitioner was detained by ICE without a judicial warrant near her home in San Bernardino, California. Petitioner has remained imprisoned by ICE since approximately then, despite having no criminal history. Petitioner's detention has now exceeded six (6) months.

5. Petitioner has been given three Bond and Custody Determination hearings and all have been denied under Flight Risk. The last two denials were appealed to the Board of Immigration Appeals ("BIA"), and they are currently pending. In all her denials the Immigration Judge ("IJ") lacked to acknowledge all of Petitioner's positive equites especially her pathway to status through Special Immigrant Juvenile Status ("SIJS") and therefore provided an inadequate bond hearing with an abuse of discretion.

6. This is also Petitioner's second Petition for Writ of Habeas Corpus as the first one was dismissed without prejudice.

7. First, and foremost, Petitioner was detained unlawfully and without a judicial warrant therefore violating her Fourth Amendment rights.

8. Secondly, Petitioner's detention violates the Due Process Clause of the Fifth Amendment because Petitioner was transported to immigration detention without opportunity to be heard

before a neutral decisionmaker for her detention. Thus, Petitioner did not receive the Due Process to which she was entitled under the Due Process Clause of the Fifth Amendment. And because Petitioner's bond proceedings were legally and constitutionally deficient and failed to meaningfully consider highly probative evidence bearing on his risk of flight and conditions of release.

9. Thirdly, the Immigration Judge failed to properly apply the factors required by the BIA's precedent decisions *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006) and *Matter of Patel*, 17 I&N Dec. 597 (BIA 1980). Given that Petitioner has no criminal record, pathway to status and has established strong family ties and community support in the United States, but none of these factors were taken into consideration. The IJ failed to conduct a reasoned and individualized assessment of Petitioner's actual risk of flight.

10. Lasty, there was a Violation of Administrative Procedure Act and Procedural Due Process. As the IJs were not subjective and neutral in Petitioner's bond hearings making Petitioner receive inadequate bond hearings time after time. The IJ failed to articulate a reasoned connection between the evidence in the record and the extraordinary conclusion that no amount of bond or combination of conditions could reasonably secure Petitioner's appearance.

11. Petitioner seeks a writ of habeas corpus requiring Respondents to immediately release the Petitioner because Respondents are detaining Petitioner in violation of the Fourth Amendment, Due Process Clause of the Fifth Amendment and Violation of Administrative Procedure Act.

## JURISDICTION & VENUE

12. This Court has jurisdiction under 28 U.S.C. § 2241 (federal habeas statute); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2201-2 (declaratory judgment). This his action arises under the Fifth Amendment to the United States Constitution, the Immigration and Nationality Act (INA), United States Constitution Article I, Section 9 (Suspension Clause).

13. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

14. Venue is proper in the Central District of California under 28 U.S.C. § 2241 because Petitioner is currently detained within this District at the Adelanto ICE Processing Center. Venue

properly lies within the Central District of California under 28 U.S.C.§ 1391, because this is a civil action in which Respondents are agencies of the United States, Petitioner is detained in this District, and a substantial part of the events or omissions giving rise to this action occurred in the district.

15. Further, pursuant to *Braden V. 30th Judicial Circuit Court to Kentucky*, 410 U.S. 484, 493 – 500 (1973), venue lies in the United States District Court for the Central District of California, the judicial district in which Petitioner is currently detained.

## REQUIREMENTS OF 28 U.S.C. § 2243

16. The court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id*.

17. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

18. Petitioner, Melannie Rangel Carrillo, is a Mexican citizen who resides in San Bernardino, California. She is removal proceedings and is currently detained at the Adelanto ICE Processing Center.

19. Respondent, Markwayne Mullin, is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the Immigration and Nationality Act and oversees ICE, which is responsible for Petitioner's detention. Respondent Mullin has ultimate custodial authority over Petitioner. He is sued in his official capacity.

20. Respondent, Todd Blanche, is the Acting Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review,

and the BIA and immigration court system it operates, is a component agency. He is sued in his official capacity.

21. Respondent, Todd Lyons, is the Senior Official Performing Duties of the Director of U.S. Immigration and Customs Enforcement, a federal law enforcement agency within the Department of Homeland Security. ICE's responsibilities include operating the immigration detention system. In his capacity as ICE Senior Official Performing Duties of the Director, Respondent Lyons exercises control over and is a custodian of persons held at ICE facilities nationally. He is Petitioner's immediate custodian and is responsible for Petitioner's detention. He is sued in his official capacity.

22. Respondent, Jaime Rios, is the Acting Director of the Los Angeles Field Office of ICE's Enforcement and Removal Operations division. As such, he is the custodian of all persons held at the ICE facilities within the Los Angeles Field Office. He is Petitioner's immediate custodian and is responsible for Petitioner's detention. He is sued in his official capacity.

23. Respondent, Fereti Semaia, is the Warden of the Adelanto ICE Processing Center and Desert View Annex, Adelanto, California, where Petitioner is detained. He has immediate physical custody of Petitioner. He is sued in his official capacity.

24. Respondent Executive Office for Immigration Review (EOIR) is the federal agency within the Department of Justice responsible for implementing the INA in removal proceedings, including for custody redeterminations or bond hearings.

25. Respondent Department of Homeland Security is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

26. Respondent Immigration and Customs Enforcement is the agency within DHS responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

//

//

//

//

//

**STATEMENT OF FACTS**

27. Petitioner, Melannie Rangel Carrillo, is twenty (20) years old who entered the United States lawfully with a B1/B2 Visa. (***See*** **Exhibit A - B1/B2 Visa**).

28. Petitioner was arrested on February 14, 2026, during a targeted operation. She was arrested by immigration authorities close to her residence without a judicial warrant from an authorized court under the U.S. Department of Justice. The Department of Homeland Security issued their own arrest warrant which was not authorized by a judge. All they had was an I-200 administrative arrest warrant as noted on her I-213 Form. (***See*** **Exhibit B – Petitioner's I-213**). She did not come in custody after being arrest for a criminal activity.

29. Since Petitioner entered with a visa and is not an applicant for admission, she was eligible to make a request for Bond and Custody Determination. Petitioner made her bond request and was scheduled a hearing on April 30, 2026. Petitioner was denied on "Flight Risk." (***See*** **Exhibit C – Bond Denial Dated April 30, 2026**). IJ denied bond under irrational bases. One reason IJ denied bond was because the sponsor was not a family member, however, there is no bases or law that says that the sponsor needs to be a family member only that there needs to be a relationship between Petitioner and sponsor, which there clearly is. IJ also claimed there was no fix address, but Petitioner provided her lease agreement where she was living and will be living if released. IJ stated there were many good attributes that Petitioner filed but still denied bond. This bond denial was not appealed with the BIA.

30. Then after, Petitioner filed a Petition for Writ of Habeas Corpus on May 26, 2026, docketed as *Rangel v Mullin*, No. 5:26-cv-02826 (C.D. Cal. 2026). This petition was dismissed without prejudice. Since then, more constitutional violations have occurred.

31. On July 21, 2026, Petitioner applied Special Immigrant Juvenile Findings with the Superior Court of California, County of San Bernardino, Guardianship Division. Given this changed circumstances Petitioner requested a bond renewal that demonstrated that Petitioner had a pathway to obtain legal status. (***See*** **Exhibit D – Bond Renewal Request**). In this filing Petitioner demonstrated that she was scheduled for a hearing on August 7, 2026, to determine her SIJ Findings with the Superior Court. Her renewal bond hearing took place on July 31, 2026.

32. When the hearing began ICE counsel stated there was no changed circumstances therefore no hearing should take place completely ignoring Petitioner's SIJS. IJ gave his decision stating there were no changed circumstances therefore denied bond because Petitioner's relief is speculative. However, SIJS starts with probate/family court and then with United States Citizenship and Immigration Services ("USCIS"), giving no merits to the immigration courts or IJs. Petitioner was denied bond again on "Flight Risk." (***See* Exhibit E – Bond Denial on July 31, 2026**). IJ failed to take into full consideration Petitioner's upcoming guardianship hearing. This decision was appealed and it still pending. (***See* Exhibit F – BIA Appeal for Bond Hearing on July 31, 2026**).

33. After, being detained for six (6) months Petitioner was ordered a *Rodriguez v Robbins* Bond Redetermination Hearing. The hearing took place on August 21, 2026. Petitioner filed proof of her SIJ Findings that were given to her by the Superior Court where the court deemed that, "[Petitioner] was neglected and abandoned by father, placed in custody of her sister Ximena Rangel Carrillo, and that is not in her best interest to be removed from the United States and returned to Mexico." Petitioner also included a copy of her mailed Form I-360, Petitioner for Amerasian, Widow(er) or Special Immigrant that was sent to the USCIS. (***See* Exhibit G – Supplemental in Support of Rodriguez Bond**).

34. Petitioner was denied bond again on "Flight Risk." (***See* Exhibit H – Bond Denial on August 21, 2026**). IJ noted that "… if [Petitioner] was detained, she would not be applying for SIJS". This is an assumption IJ made about Petitioner but never asked her directly. IJ again stated that the sponsor is not close to Petitioner, but they are in fact friends who will adhere that Petitioner attends all her court hearings. IJ failed to take into consideration all of Petitioner's positive equites. This decision was appealed and it still pending. (***See* Exhibit I – BIA Appeal for Bond Hearing on August 21, 2026**).

35. However, any appeal of that decision to the BIA is futile and will cause significant delays, impinging on Petitioner's due process and liberty interests. This is not required but two appeals are pending. Petitioner's detention violates the Immigration and Nationality Act, the accompanying regulations, and Petitioner's right to Due Process. It is unknown how long the

appeal process will take. Petitioner's first habeas was dismissed under the bases of exhaustion however, given the continued violations to Petitioner is facing waiting for a BIA decision is a deprivation of liberty.

36. When the hearing on August 21, 2026, took place Petitioner had still not received her receipt notice for her I-360. Since then, it has been received. (***See* Exhibit J – I-360 Receipt Notice**). She is clearly in proceedings to receive SIJS then after she can apply for residency.

## THE COURT HAS JURISDICTION OVER MIXED QUESTIONS OF LAW AND LEGAL QUESTIONS

37. The jurisdiction stripping provision at 8 U.S.C. § 1226(e) applies only to a challenge to a "discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (plurality) (cleaned up).

38. The Court has jurisdiction to address legal claims and mixed questions of law. *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024).

39. The Court must apply BIA precedent to determine whether Petitioner presents such a risk of flight that a decision denying bond in its entirety is warranted. *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006); Matter of Patel, 15 I. & N. Dec. 666, 666–67 (BIA 1976). In bond proceedings based on prolonged detention, such as here pursuant to *Rodriguez v. Holder*, No. CV 07-2129 TJH (RNBx), 2013 WL 5229795 (C.D.Cal Aug. 6, 2013), the burden is on the government to establish by clear and convincing evidence that Petitioner is a flight risk or danger. *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024).

40. The application of these precedent decisions to undisputed facts is reviewable as a mixed question of law. *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024).

//

//

//

//

//

**EXHAUSTION TO THE BOARD OF IMMIGRATION APPEALS IS NOT REQUIRED AND SHOULD BE WAIVED**

41. There is no requirement of statutory exhaustion for a petition for writ of habeas corpus. However, exhaustion may be required as a prudential matter. *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012).

42. "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

43. Because exhaustion is not jurisdictional, courts "have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004).

44. A court may waive the exhaustion requirement "when administrative remedies are inadequate or their exercise would be futile, or irreparable injury would result without immediate judicial intervention." *Ward v. Chavez*, 678 F.3d at 1045.

45. The exhaustion of a bond appeal under 28 U.S.C. § 2241 is "prudential" (judicially created), not statutory. Respondents will claim that Petitioner has failed to exhaust administrative remedies given that an appeal should come first under 28 U.S.C. § 2241. As previously stated in the Petition, there is no requirement of statutory exhaustion for a petition for writ of habeas corpus. However, exhaustion may be required as a prudential matter. *Ward v. Chavez*, 678 F.3d 1042,1045 (9th Cir. 2012). Because exhaustion is not jurisdictional, courts "have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004).

46. Petitioner has not bypassed the administrative process. To the contrary, she sought custody redetermination before the Immigration Court, sought reconsideration after presenting additional evidence concerning sponsorship and community ties, and timely appealed the adverse custody determination to the BIA. Thus, this is not a case in which a detainee deliberately circumvented available administrative remedy. See *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Petitioner has invoked the administrative process and remains detained while that process

continues. Requiring her to remain incarcerated until the BIA eventually resolves her appeal would elevate prudential exhaustion over the fundamental liberty interest that habeas corpus exists to protect.

47. Moreover, the issues presented in this Petition do not require the BIA's specialized expertise or further development of the administrative record. Petitioner raises constitutional and legal challenges to the lawfulness of her detention, including whether ICE arrested her without the warrant required by 8 U.S.C. § 1226(a) and without facts satisfying the narrow warrantless-arrest exception under 8 U.S.C. § 1357(a)(2), and whether the Immigration Judge applied a constitutionally adequate legal standard in concluding that Petitioner presented such an extreme flight risk that no amount of bond or combination of conditions could secure his appearance. These are questions of federal statutory and constitutional law squarely within this Court's competence. See *Hernandez v. Sessions*, 872 F.3d 976, 988–89 (9th Cir. 2017). Allowing judicial review under these circumstances would not encourage deliberate bypass of the administrative scheme; it would permit review only of the type of colorable constitutional and legal claims federal courts are specifically empowered to decide.

48. Prudential exhaustion should be waived because administrative remedies are inadequate, and exhaustion would be futile. Of the 59 BIA decisions issued in the months May through September 2025 in cases where the noncitizen appealed Adelanto Immigration Court Bond Decisions, none of those cases overturned an Immigration Judge's finding that the noncitizen was a danger to others or a flight risk.[1] Of the six decisions which sustained the appeal and remanded the case, all were due to procedural errors made by the Immigration Judge. The precedent decisions issued by the BIA under the Trump Administration further indicate that it is futile to require prudential exhaustion in this case. A March 30, 2026, report issued by the National Public Radio found that last year, 97 percent of Board published decisions were in favor of the Department of Homeland Security.[2] On April 9, 2026, The New York Time reported that "The

[1] The decisions are posted at EOIR Freedom of Information Act (FOIA) Reading Room at https://foia.eoir.justice.gov/app/ReadingRoom.aspx. They are not available after September of 2025.
[2] Ximena Bustillo, Rahul Mukherjee, "An Immigration Court Few Have Heard of

administration has instructed judges to stop granting bond to immigrants who crossed the border illegally, a change from decades of practice. The new policy has required people to remain in detention for extended periods even if they do not have a criminal record and have lived in the country for years."[3]

49. Respondents will erroneously argue that this Court lacks jurisdiction because Petitioner did not appeal to the BIA. However, unlike other statutory blocks, it is well-settled law in the Ninth Circuit that exhaustion for a habeas petition under § 2241 is purely prudential, not a statutory mandate. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004); *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001). Because exhaustion is prudential, this Court maintains the discretion to waive it where "pursuit of administrative remedies would be a futile gesture" or "irreparable injury will result." *Laing,* 370 F.3d at 1000. Requiring Petitioner to remain detained for months while waiting for a BIA appeal constitutes severe, irreversible injury that the agency cannot retroactively remedy.

50. Appealing to the BIA the bond decision would be futile because there are significant structural delays with BIA leading to procedural inadequacy and the basis of this Petition is also to address the Constitutional Violations which the BIA's lack that authority. If Petitioner were to exhaust these remedies that will cause irreparable harm through prolonged, unconstitutional detention. This will add to Petitioner more months in detention when he clearly poses no flight risk. Here, requiring Petitioner to exhaust before the BIA would serve none of the purposes that prudential exhaustion is designed to achieve. The BIA is not positioned to correct the legal errors presented here; it has demonstrated a consistent practice of affirming bond denials on these precise grounds. Administrative exhaustion would not generate a more complete record; it would simply delay judicial review while Petitioner remains detained.

---

is Quietly Shaping Policy Behind the Scenes," npr.org, (Mar. 20, 2026) https://www.npr.org/2026/03/20/nx-s1-5707535/trump-immigration-detention-appeals-board-deportation

[3] Nicholas Nehamas, Allison McCann, Steven Rich, Jazmine Ulloa and Hamed Aleaziz, "How Trump Purged Immigration Judges to Speed Up Deportations," The New York Times, April 9, 2026 https://www.nytimes.com/2026/04/09/us/politics/trump-miller-immigration-judges-purge.html

51. In this case, even if an appeal to the BIA were not futile, requiring Petitioner to exhaust would cause irreparable injury. Based on the fifty-nine Adelanto bond appeal decisions referenced above, processing times at the Board ranged from approximately two to ten months. (***See* Exhibit K - Report and Declaration of Zabdi J. Salazar Re: BIA Bond Appeal Outcomes and Processing Times (Adelanto Immigration Court, 2024–2026)**).

52. Petitioner has already been detained for close to seven (7) months. Forcing her to wait an additional two to ten months for a BIA decision that the data overwhelmingly suggests will affirm the denial would extend his civil detention to potentially over a year. Civil immigration detention is not a sanction. It is a regulatory measure. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

53. The purpose of prudential exhaustion is to promote orderly administrative review, not to require a person to endure potentially unlawful confinement while an administrative appeal proceeds at an uncertain pace. Where, as here, Petitioner has already pursued available administrative remedies, the BIA's expertise is unnecessary to resolve the constitutional and statutory questions presented, and continued detention causes an ongoing and irreparable loss of liberty, further exhaustion would serve no meaningful purpose. The Court should therefore exercise its discretion to waive any remaining prudential exhaustion requirement and reach the merits of Petitioner's habeas claims. See *Laing*, 370 F.3d at 1000–01.

54. Prudential exhaustion should be waived, and this Court should reach the merits of Petitioner's habeas claims.

## LEGAL STANDARD

### Writ of Habeas Corpus

55. The following legal principles govern Petitioner's claims for habeas corpus relief. Although Congress has authorized the Executive Branch to arrest and detain certain noncitizens under the Immigration and Nationality Act ("INA"), that authority remains subject to the Constitution, federal statutes, and longstanding principles governing executive detention. As discussed below, the Great Writ of habeas corpus provides the traditional means by which federal courts review the legality of immigration detention and remedy constitutional violations.

//

**A. Detention of Non-Citizens Under 8 U.S.C. 1226 (a)**

56. Petitioner is detained pursuant to 8 U.S.C. § 1226(a), which authorizes the detention of certain noncitizens "already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). The Ninth Circuit recently confirmed that noncitizens apprehended in the interior of the United States are governed by the detention framework of § 1226 rather than the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)(A). *Rodriguez Vazquez v. Bostock*, No. 25-6842, slip op. at 26–27 (9th Cir. July 30, 2026).

57. When a noncitizen is taken into immigration custody pursuant to § 1226(a), immigration officials make an initial custody determination and may release the noncitizen on bond or other conditions if the applicable statutory and regulatory requirements are satisfied. See 8 U.S.C. § 1226(a)(2); 8 C.F.R. § 236.1(c)(8). Following the initial custody determination, the noncitizen may request a custody redetermination before an Immigration Judge. 8 C.F.R. § 236.1(d)(1).

58. At a custody redetermination hearing, the noncitizen bears the burden of demonstrating that release on bond is warranted. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). In making that determination, the Immigration Judge considers whether the noncitizen "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id.* (citing *Matter of Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)).

59. In evaluating whether release is warranted, the Immigration Judge may consider any or all of the following factors: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry into the United States. *Matter of Guerra*, 24 I. & N. Dec. at 40.

60. Although an Immigration Judge has "broad discretion in deciding the factors that he or she may consider" and may give greater weight to one factor over others, that discretion is not unlimited. *Id.* The Immigration Judge may assign greater weight to one factor only so long as the resulting custody determination is reasonable. *Id.* Thus, the exercise of discretion must have a reasonable foundation and must reflect an individualized assessment of whether the particular detainee presents a danger, flight risk, or otherwise poor bail risk.

61. Federal habeas review does not authorize a district court merely to reweigh the evidence considered by the Immigration Judge. However, 8 U.S.C. § 1226(e) does not foreclose judicial review of constitutional claims or questions of law. *Martinez v. Clark*, 124 F.4th 775, 781–85 (9th Cir. 2024). The Ninth Circuit has held that the application of the governing bond standard to established facts presents a reviewable mixed question of law and fact. *Id.* at 783–85. Accordingly, a habeas court may determine whether the Immigration Judge applied the correct legal standard and abused his or her discretion, while refraining from independently reweighing the underlying evidence. *Id.* at 784–85 (citing *Wilkinson v. Garland*, 601 U.S. 209, 220 (2024)).

**B. Habeas Corpus is the Traditional Means of Challenging Unlawful Executive Detention**

62. Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see *Rasul v. Bush*, 542 U.S. 466, 473 (2004).

63. Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to a petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see *Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2).

64. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that

its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A noncitizen in immigration custody may bring a § 2241 petition on the ground that his detention violates the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

65. The petitioner bears the burden of proving that he is being held contrary to law by a preponderance of the evidence. *Walker v. Johnston,* 312 U.S. 275, 286 (1941) ("On a hearing, [the § 2241 petitioner has] the burden of sustaining his allegations by a preponderance of evidence."); *Parke v. Raley,* 506 U.S. 20, 31 (1992); *Sumner v. Mata,* 449 U.S. 539, 551 (1981).

**C. Civil Immigration Detention is Subject to Constitutional Limitation**

66. Congress has authorized immigration detention under several provisions, including 8 U.S.C. §§ 1226 and 1231. That authority is not unlimited. Immigration detention is civil, not criminal, and remains subject to the Constitution's constraints.

67. The Supreme Court has repeatedly recognized that civil immigration detention serves limited regulatory purposes, principally ensuring a noncitizen's appearance at removal proceedings and protecting the community from danger. Because immigration detention is regulatory rather than punitive, continued detention must bear a reasonable relationship to those legitimate governmental interests. *Zadvydas*, 533 U.S. at 690; *Demore v. Kim*, 538 U.S. 510, 527-28 (2003); *Jennings v. Rodriguez*, 583 U.S. 281 (2018).

**<u>Fourth Amendment</u>**

68. "The touchstone of the Fourth Amendment is reasonableness . . . ." *United States v. Knights*, 534 U.S. 112, 118 (2001). This is "generally assessed by carefully weighing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *County of Los Angeles v. Mendez*, 581 U.S. 420, 427 (2017) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Overall, reasonableness is an objective inquiry that "is evaluated by looking at the 'totality of the circumstances.'" *Case v. Montana*, 607 U.S. ---, 146 S. Ct. 500, 508 (2026) (first quoting *Barnes v. Felix*, 605 U.S. 73, 80 (2025); and then quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).

//

**A. An Arrest Warrant is Required**

69. Section 1226(a) authorizes the arrest and detention of a noncitizen pending removal proceedings.

70. The Statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

71. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter. 8 C.F.R. § 236.1(b)(1).

**B. A warrantless arrest is valid if the government satisfies the limited exceptions under 8 U.S.C. § 1357(a)(2)**

72. Immigration officers are authorized to make warrantless arrests in limited circumstances. These include when a noncitizen is "entering or attempting to enter the United States in violation of any law or regulation ... regulating the admission, exclusion, expulsion, or removal of aliens," or when an officer has reason to believe (i) the noncitizen is in the United States in violation of such laws or regulations and (ii) the noncitizen is likely to "escape" before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2); see also 8 U.S.C. §§ 1357(a)(4) – (5) (providing other circumstances that justify warrantless arrest).

**Fifth Amendment**

73. The Fifth Amendment guarantees a different constitutional protection: due process. The Fifth Amendment states that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.

74. The Supreme Court has emphasized that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). Further, "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens,

whether their presence here is lawful, unlawful, temporary, or permanent."3 Zadvydas, 533 U.S. at 693.

**A. The Fifth Amendment Requires Constitutionally Adequate Procedures before the Government May Deprive an individual of Physical Liberty**

75. The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. All persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," are entitled to protection under this provision of the Constitution. *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id*. at 690; see also *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

76. A procedural due process claim involves two inquiries: first, whether the challenged government action implicates a protected liberty interest; second, if so, what process is constitutionally due before that interest may be taken. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); accord *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (Due Process Clause "requires some kind of a hearing before the State deprives a person of liberty or property" (emphasis in original)).

77. Where a protected liberty interest is at stake, courts apply the three-factor test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

78. In *Mathews*, the Supreme Court established three factors for a court to consider for purposes of determining what process is constitutionally sufficient to protect a liberty interest: The private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the Government's interest, including the function involved

and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335; see *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context");

79. Because the government's discretion to detain individuals under 8 U.S.C. § 1226(a), and to revoke custody decisions under § 1226(b), is not "unlimited," that discretion must comport with the Mathews framework and constitutional due process more broadly. *Zadvydas*, 533 U.S. at 698.

## CAUSE OF ACTION

### COUNT ONE

### *Violation of Fourth Amendment*

### *Warrantless Arrest*

80. Petitioner repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

81. Petitioner's physical detention is unconstitutional and lacks lawful authority because it stems entirely from an egregious Fourth Amendment violation.

82. Petitioner was the explicit target of an enforcement operation executed completely devoid of a judicial warrant issued by a neutral and detached magistrate.

83. Lacking a judicial warrant, agents unlawfully breached the constitutional boundary of privacy to effectuate a targeted seizure based on a mere internal administrative instrument, violating clearly established federal law.

84. There was no warrant for Petitioner or reason to believe he will be a flight risk before one can be issued.

85. Civil immigration arrest is lawful under 8 U.S.C. § 1357(a)(2) only where the officer has reason to believe both that the person is in the United States in violation of law and that he "is likely to escape before a warrant can be obtained for his arrest." In this Circuit, "reason to believe" is equivalent to probable cause. Tejeda-Mata v. INS, 626 F.2d 721, 725 (9th Cir. 1980).

86. Respondents did not have the proper judicial form to arrest Petitioner. Petitioner was only issued an I-200 administrative form which was not a form signed by a federal judge that authorized her detainment.

## COUNT TWO

***Petitioner's Detention Violates Their Fifth Amendment Right to Due Process***

87. Petitioner repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

88. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

89. Petitioner has a fundamental interest in liberty and being free from official restraint.

90. Immigration detention must serve an immigration purpose which must outweigh an individual's constitutionally protected interest in avoiding physical restraint. *Demore v. Kim*, 538 U.S. 510, 527((2003). Mandatory detention of noncitizens who as a categorical matter do not pose a danger to the community or a flight risk violates due process.

91. Respondents' detention of Petitioner without providing Petitioner an initial custody determination and without a bond hearing to determine whether they are a flight risk or a danger to others violates their right to Due Process.

## COUNT THREE

***Violation of Fifth Amendment Right to Due Process***

***Procedural Due Process***

***Constitutionally Defective Custody Determination/Bond Hearings***

92. Petitioner repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

93. The Immigration Judge's failure to properly apply the governing legal standard directly implicates Petitioner's due process rights. As the Southern District of California recently held, "[t]he IJ's misapplication of the legal standard also bears on Petitioner's due process rights,"

because due process requires an Immigration Judge to consider the relevant evidence presented in support of release. *Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 U.S. Dist. LEXIS 85165, at *16 (S.D. Cal. Apr. 16, 2026) (citing *Vilchez v. Holder*, 682 F.3d 1195, 1198 (9th Cir. 2012)).

94. This requirement is particularly important in immigration detention proceedings because Petitioner's physical liberty is at stake. As another district court recently explained, "[g]iven the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations." *Gimenez v. Hernandez*, No. 2:26-cv-00966-GJL, 2026 U.S. Dist. LEXIS 94446, at *17 (W.D. Wash. Apr. 29, 2026).

95. Although federal courts generally take Immigration Judges at their word when they state that they considered the evidence presented, that presumption is not absolute. *Velasquez*, 2026 U.S. Dist. LEXIS 85165, at *17 (citing *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024)). Where the record indicates that the Immigration Judge failed to actually consider highly probative or potentially dispositive evidence, a court need not accept a generalized or vague statement that all evidence was considered. *Id.* (citing *Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011)).

96. The last two bond denial orders were basically the same. Even when new evidence was brought up to light. The record contained highly probative evidence bearing directly on Petitioner's risk of flight. Petitioner has no criminal history identified by Respondents as a basis for detention. There is no evidence that Petitioner has ever attempted to flee immigration authorities, escaped custody, failed to appear for an immigration proceeding, or violated any prior condition of release.

97. Thus, although the Immigration Judge may have generally asserted consideration of the record, the decisions do not demonstrate meaningful consideration of evidence that was highly probative to the flight-risk determination. As recognized in *Velasquez*, where the record contains no meaningful discussion of highly probative evidence, a court need not credit a vague assertion

that all relevant evidence was considered. 2026 U.S. Dist. LEXIS 85165, at *17–18 (citing *Cole*, 659 F.3d at 771–72).

98. This is not merely a disagreement with how the Immigration Judge weighed the evidence. Petitioner challenges the constitutional adequacy of the process itself. The problem is that the Immigration Judge imposed the most restrictive possible custody determination continued detention with no bond and no available conditions of release without demonstrating meaningful consideration of evidence directly bearing on whether Petitioner would actually appear for future proceedings.

99. The same error deprived Petitioner of due process. The deprivation of physical liberty cannot constitutionally rest upon a bond proceeding in which the decisionmaker fails to meaningfully consider the relevant evidence and apply the governing legal standard. Petitioner's continued detention pursuant to that legally deficient flight-risk determination therefore violates the Due Process Clause of the Fifth Amendment.

100. Accordingly, the Court should grant the Petition and order Petitioner's release or, alternatively, order a new constitutionally adequate custody hearing at which the applicable legal standards, Petitioner's present circumstances, and reasonable conditions of release are meaningfully considered.

101. There is no legit reason why Petitioner was denied she provided proof of her SIJS, fixed address, sponsorship, community support and the IJ still deemed her a flight risk, time after time.

**COUNT FOUR**

***Violation of the Fifth Amendment Due Process Clause***

***Substantive Due Process***

***Detention not Reasonably Related to Any Legitimate Purpose***

102. Petitioner re-allege and incorporate by reference the paragraphs above.

103. Freedom from physical restraint lies at the heart of the liberty protected by the Due Process Clause, and civil detention violates substantive due process unless it bears a reasonable relation to a legitimate governmental purpose. *Zadvydas*, 533 U.S. at 690 (2001).

104. Accordingly, "[i]n the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." Hernandez, 872 F.3d at 990 (cleaned up); *Zinermon,* 494 U.S. at 127 (Generally, "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."). In the immigration context, for such hearings to comply with due process, the government must bear the burden to demonstrate, by clear and convincing evidence, that the noncitizen poses a flight risk or danger to the community. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); see also Martinez v. Clark, 124 F.4th 775, 785, 786 (9th Cir. 2024).

105. The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. *See generally Reno v. Flores,* 507 U.S. 292 (1993); *Zadvydas*, 533 U.S. 678; *Demore*, 538 U.S. 510.

106. "The Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

107. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. at 690.

108. Immigration detention only comports with Due Process when it furthers the government's goals of "ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Id.*

109. Immigration detention that does not serve the legitimate government purposes of preventing flight or mitigating danger violates substantive Due Process. *Id*.

110. In this case, Petitioner does not have a criminal record and pending status with USCIS. There is no reason to continue her detention let alone a purpose.

111. The Immigration Judge's conclusion that no bond in any amount, even coupled with alternatives to detention, could secure Petitioner's appearance is a determination that she

must be detained outright. On these facts, outright physical detention bears no reasonable relation to any legitimate governmental purpose and therefore violates substantive due process.

112. Petitioner's continued detention is unconstitutional, and she is entitled to release.

**COUNT FIVE**

***Violation of Administrative Procedure Act***

***Abuse of Discretion in Failing to Properly Apply Matter of Patel and Matter of Guerra***

113. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

114. The denials of release on bonds are a final agency action where, as here, prudential exhaustion not required.

115. Under the Administrative Procedure Act, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," that is "contrary to constitutional right [or] power," or that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C).

116. Immigration judges are required to follow precedent. 8 C.F.R. § 1003.1(g) ("decisions of the Board and decisions of the Attorney General are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United States.").

117. The application of precedent is required by due process. *Perez Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026) ("The IJ's misapplication of the legal standard also bears on Petitioner's due process rights."). "[D]ue process requires [an] IJ to consider the relevant evidence[.]" *Vilchez v. Holder*, 682 F.3d 1195, 1198 (9th Cir. 2012) (citing *Larita–Martinez v. I.N.S.*, 220 F.3d 1092, 1095 (9th Cir.2000)).

118. The Board of Immigration Appeals' precedent decision in Matter of Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006) requires that the noncitizen demonstrate that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." Id. If these factors are met, the immigration judge is required to order release. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022).

119. The *Matter of Guerra* factors include any or all of the following:

1) whether the alien has a fixed address in the United States;
2) the alien's length of residence in the United States;
3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future;
4) the alien's employment history;
5) the alien's record of appearance in court;
6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses;
7) the alien's history of immigration violations;
8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and
9) the alien's manner of entry to the United States.

Matter of Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006).

120. The IJ used the *Matter of Guerra* factors as a balancing test rather than checklist. But the IJ also failed to apply the full set of these factors.

121. Further, BIA precedent in *In Matter of Patel*, 15 I. & N. Dec. 666, 666–67 (BIA 1976), requires a finding that Petitioner is not a flight risk. Matter of Patel found that an initial violation of immigration law bears "little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding." *Id.* According to the BIA, "[s]uch a broad interpretation of what constitutes an 'adverse factor' in this context could result in requiring a bond of almost every alien who is held in deportation proceedings." *Id.*

122. The BIA held that an individual with long residence and ties to the United States who is eligible for relief from removal should not be held in detention at all, and ordered release on his own recognizance. *Id. See Chavarria Mejia v. Crawford,* No. 1:26-CV-253 (LMB/LRV), 2026 WL 819603, at *5 (E.D. Va. Mar. 25, 2026).

123. Petitioner entered with a visa, has a fixed address and will live with her guardian, she has no criminal record, or indication she will fail to appear, has a sponsor and there is no record that Petitioner has made attempts to flee.

124. The record instead contains substantial evidence inconsistent with a finding that Petitioner presents an unmitigable flight risk. Petitioner has no criminal history identified by Respondents. He has never been charged with or convicted of a crime in the United States that Respondents rely upon to justify his detention. There is likewise no identified evidence that Petitioner has ever attempted to flee from immigration officers, escaped from custody, failed to appear for a required proceeding, used an alias to avoid authorities, or otherwise attempted to evade the immigration process.

125. At Petitioner's first bond hearing the IJ stated that the sponsor was not family to Petitioner also that all her support were from people who barely knew Petitioner. Neither *Matter of Guerra nor Matter of Patel* establishes the existence of a third-party sponsor as an independent prerequisite to release under § 1226(a). *Guerra* instead requires an individualized assessment of circumstances bearing upon the person's actual likelihood of appearing for future proceedings. Additionally at this hearing, IJ stated there was no fixed address, Petitioner's counsel explained that when she was detained by ICE Petitioner had recently come into a lease agreement. IJ did not acknowledge that and still used it as a factor to deny. *Guerra* states that there must be a fixed address which there was clearly one.

126. Then after at Petitioner's next bond hearing IJ denied because there were no changed circumstances and did not take into consideration that Petitioner was applying for SIJ Findings during that time. *Guerra* factors include if one has pathway to status which Petitioner does. At this moment there was no reason to keep her detained as she as a pathway that is not dedicated by the immigration court or IJ.

127. Coming to the *Rodriguez* bond hearing, Petitioner already was deemed that those findings and had filed her I-360 with USCIS. However, IJ concluded that her relief is speculative but that is not something he can determine as he has no jurisdiction over her application. IJ again mentioned the relationship with sponsor even after providing a letter of their relationship IJ felt it was not enough.

128. That reasoning underscores the constitutional deficiency. The first custody determination relied upon Petitioner's lack relationship to sponsor and fixed address, when

Petitioner later supplied those factors, the Immigration Judge concluded that the new evidence along her SIJ Findings did not alleviate the previously determined flight risk without identifying what concrete evidence continued to establish that Petitioner was likely to abscond or why no available condition of release could mitigate that risk.

129. Recent courts applying *Martinez, Guerra, and Patel* have likewise recognized that an Immigration Judge abuses discretion where the decision fails to meaningfully engage with the relevant factors, relies instead upon matters having little rational connection to flight risk, or leaves the reviewing court to speculate as to why favorable evidence was insufficient. S*ee Kuy Nam Ko v. Mullin*, No. 5:26-cv-02020-KS, slip op. at 11–12 (C.D. Cal. May 22, 2026).

130. In *Kuy Nam Ko*, the Central District found an abuse of discretion where the record did not contain a reasoned explanation demonstrating how the Immigration Judge evaluated the evidence under the governing factors or why substantial mitigating evidence failed to overcome the asserted flight risk. The court emphasized that the absence of a reasoned explanation and meaningful engagement with the governing legal standard prevented the court from determining that the custody decision resulted from a proper individualized assessment.

131. The same problem exists here. Petitioner's detention does not rest upon evidence that he committed crimes, fled authorities, violated prior conditions of release, or failed to appear for proceedings. It rests upon a conclusory determination that he presents an extraordinary flight risk so great that no amount of bond or combination of conditions would suffice without a reasoned application of the *Guerra* factors explaining how the evidence supports that extreme conclusion.

132. The Court need not substitute its judgment for that of the Immigration Judge to identify this error. The issue is not whether the Immigration Judge could have assigned different weight to individual *Guerra* factors. Rather, the issue is whether the Immigration Judge applied the governing legal standard at all and supplied a rational connection between the evidence in the record and the extraordinary conclusion that Petitioner cannot safely be released under any bond amount or combination of conditions.

133. Because the Immigration Judge failed to meaningfully apply *Matter of Guerra* and *Matter of Patel* to Petitioner's individualized circumstances, relied upon considerations that do not reasonably support an unmitigable flight-risk finding, and failed to meaningfully address substantial evidence weighing against detention, the custody determination constitutes an abuse of discretion. *See Martinez,* 124 F.4th at 783–84.

**COUNT SIX**

***Violation of Administrative Procedure Act:***

***Arbitrary and Capricious Bond Determination and Abuse of Discretion***

134. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

135. The Administrative Procedure Act ("APA") provides that courts must "hold unlawful and set aside agency action . . . found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2); *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1143-44 (D. Or. 2025). "[T]he touchstone of 'arbitrary and capricious' review under the APA is 'reasoned decisionmaking.'" *Altera Corp. & Subsidiaries v. Comm'r*, 926 F.3d 1061, 1080 (9th Cir. 2019) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 52 (1983)); *YZ-L-H*, 792 F. Supp. 3d at 1144.

136. Thus, any action by an agency "can only survive arbitrary or capricious review where it has articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 493 (9th Cir. 2023) (cleaned up); *Y-Z-L-H*, 792 F. Supp. 3d at 1144. Courts "'may not infer an agency's reasoning from mere silence' because 'it makes no difference what [an agency] may have had in mind but failed to express; an administrative agency is not allowed to change direction without some explanation of what it is doing and why.'" *Y-Z-L-H*, 792 F. Supp. 3d at 1144 (quoting *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008) and *Int'l Union, UAW v. NLRB*, 802 F.2d 969, 973-74 (7th Cir. 1986)).

137. The Immigration Judge's custody determination in this case fails that basic requirement of reasoned decision-making. In all of Petitioner's bond hearings the Immigration Judge concluded that Petitioner presented such a substantial flight risk that no amount of bond and no combination of conditions of release would be sufficient to secure his appearance. Yet the decisions provide no reasoned explanation connecting Petitioner's actual conduct to such an extraordinary conclusion. They are just generic and cite caselaw.

138. The record does not demonstrate that Petitioner has ever absconded from immigration authorities, failed to appear for an immigration proceeding, escaped custody, violated a condition of release, or otherwise attempted to evade the immigration process. Nor have Respondents identified any criminal charge or conviction establishing that Petitioner presents a danger to the community.

139. Nevertheless, the Immigration Judge relied substantially upon Petitioner's alleged lack of sponsorship and community support in denying release. That reasoning does not comport with the individualized analysis required under *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). *Guerra* identifies factors relevant to custody including fixed address, length of residence, family ties, employment, appearance history, criminal history, immigration history, attempts to flee authorities, and manner of entry but does not establish the existence of a third-party sponsor as a categorical prerequisite to release.

140. All the decisions expose the absence of reasoned decision-making. Here, no such rational connection appears from the Immigration Judge's decisions. The record does not explain why Petitioner/s lack of criminal history, absence of any history of flight or failures to appear, affirmative pursuit of immigration relief, subsequent sponsor, proposed address, and availability of less restrictive conditions were nevertheless insufficient to mitigate any risk of nonappearance.

141. Accordingly, the custody determination lacks the reasoned explanation required of agency decision-making and constitutes arbitrary and capricious agency action, an abuse of discretion, and action not in accordance with the governing legal standards.

142. As Petitioner has no indication, she is a flight risk through her avenue of relief, the immigration judge was required to set a reasonable bond.

143. Additionally, IJ failed to take into consideration all her positive equites and instead put more hurdles like Petitioner not being related or close to her sponsor (which is not true). Petitioner has a relationship with her sponsor.

**COUNT SEVEN**

***Violation of Procedural Due Process:***

***Constitutionally Inadequate Bond Proceedings***

144. Petitioner repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

145. The Due Process Clause of the Fifth Amendment mandates constitutionally adequate procedures before the government may continue to deprive an individual of their liberty through civil detention. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). To determine the adequacy of such procedures, the Court must balance: (1) the private liberty interest affected; (2) the risk of an erroneous deprivation through the procedures used; and (3) the government's interests. Id.

146. First, Petitioner satisfies the first factor in Matthews. Petitioner's interest in physical liberty is fundamental. She has remained in immigration detention for close to seven (7) months and despite the absence of any criminal record and no evidence of being a flight risk related to the allegations used to justify her incarceration.

147. Second, Petitioner satisfies the second factor because the risk of erroneous deprivation is extremely high where detention is based on unproven allegations that she is a flight risk when there is no evidence to support that. She has a possible route for status and because of that alone demonstrates she is not a flight risk.

148. Thus, the government has not presented reliable evidence sufficient to justify Petitioner's continued detention. Because the detention is predicated on mere allegations rather than proven facts, it fails to satisfy the rigorous demands of Due Process.

149. Although the Ninth Circuit recently declined to impose new categorical procedural requirements in ordinary 8 U.S.C. § 1226(a) detention proceedings, it emphasized that such proceedings must still "comport with the requirements of the Due Process Clause," which

mandates "fundamental fairness." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (citing Chin Yow v. United States, 208 U.S. 8, 12 (1908)).

150. Petitioner has gone to three (3) bond hearings, and all denied on "flight risk," even with the change circumstances Petitioner provided.

151. Therefore, Petitioner is being unlawfully detained without an unbiased bond hearing to which Petitioner is entitled.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully request that this Court:

a. Assume jurisdiction over this matter;

b. Order that Petitioner shall not be transferred outside of the Central District of California while this petition is pending;

c. Declare that the Immigration Judge's bond denials violated due process and was an abuse of discretion;

d. Issue an Order to Show Cause ordering Respondents to show cause within three days why this Petition should not be granted;

e. Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from Custody;

f. Declare that Petitioner's detention is governed by 8 U.S.C. § 1226(a) and that their detention under 8 U.S.C. § 1225(b)(2) is unlawful;

g. Enjoin Respondents from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which he is determined to be a flight risk or danger to the community in compliance with governing law and due process;

h. Award reasonable attorneys' fees and cost pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, or any other applicable law; and

i. Order further relief as this Court deems just and appropriate.

Respectfully submitted,

Dated: 09/10/2026

*/s/ Karla P. Navarrete*

Karla P. Navarrete, Esq (CA SBN#: 289891)
Law Office of Karla Navarrete
8997 California Ave., Suite B
South Gate, CA 90280-3065
Telephone: (213) 444-9563
Email: abogadakarla@gmail.com
Counsel for Petitioner

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I am submitting this verification on behalf of the Petitioner because I am one of Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: 09/10/2026

*/s/ Karla P. Navarrete*

Karla P. Navarrete, Esq (CA SBN#: 289891)
Law Office of Karla Navarrete
8997 California Ave., Suite B
South Gate, CA 90280-3065
Telephone: (213) 444-9563
Email: abogadakarla@gmail.com

## LIST OF EXHIBITS

**Exhibit A** – B1/B2 Visa

**Exhibit B –** Petitioner's I-213

**Exhibit C** – Bond Denial Dated April 30, 2026

**Exhibit D –** Bond Renewal Request

**Exhibit E** – Bond Denial on July 31, 2026

**Exhibit F** – BIA Appeal for Bond Hearing on July 31, 2026

**Exhibit G** – Supplemental in Support of Rodriguez Bond

**Exhibit H** – Bond Denial on August 21, 2026

**Exhibit I** – BIA Appeal for Bond Hearing on August 21, 2026

**Exhibit J** – I-360 Receipt Notice

**Exhibit K** – Report and Declaration of Zabdi J. Salazar Re: BIA Bond Appeal Outcomes and Processing Times (Adelanto Immigration Court, 2024–2026)